IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| **RICARDO A. JONES,** | * |
| *Plaintiff*, | * |
|  | * Civil Action No. 1:22-cv-03095-JRR |
| v. | * |
| **iGO MARKETING AND ENTERTAINMENT LLC,** *et al.*, | * |
|  | * |
| *Defendants*. | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter comes before the court on Defendants iGo Marketing and Entertainment LLC ("iGo") and Brian Murphy's Motion to Dismiss Plaintiff's Complaint. (ECF No. 17; the "Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion shall be granted.

## I.   BACKGROUND[1]

Plaintiff Ricardo Jones is an individual resident of the State of Maryland. (Complaint, ECF No. 3 ¶ 1.) Defendant iGo Marketing and Entertainment, LLC ("iGo"), is a Delaware limited liability company with its principal place of business in Westhampton Beach, New York. *Id.* ¶ 2. Formerly known as Exeter Communications Group, LLC, iGo is a "marketing agency that procures endorsement opportunities, sponsorships, and marketing functions for its clients, including corporate partnerships, celebrities, and branded entertainment companies." *Id.* ¶¶ 2, 7. Defendant

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.

Brian Murphy is an individual resident of the State of New York and Chief Executive Officer of iGo. *Id.* ¶ 3. This action arises out of Defendants' alleged wrongful withholding of wages owed to Plaintiff. *Id.* ¶¶ 32-33.

On February 5, 2013, Defendants hired Plaintiff to fill an entertainment marketing consulting position pursuant to an Employment Agreement attached to the Complaint as Exhibit A. (ECF No. 3 ¶ 8.) Pursuant to the Employment Agreement (which refers to iGo's predecessor entity as "ECG"), Plaintiff was to receive "[a] payment every two weeks on the 1st and 15th day of the month of $3,250.00 equating to $80,000 per year" and a "20% commission of gross revenue secured for ECG based off of talent to brand introduction and vice versa." *Id.* ¶ 10. According to the Employment Agreement, Plaintiff was entitled to "50% of commission . . . at signature and the other 50% is due when payment is received." *Id.*

Plaintiff alleges that during his employment, he worked with iGo client Kevin Hart to secure marketing opportunities for Mr. Hart. (ECF No. 3 ¶ 11.) iGo and Mr. Hart had an agreement (the "Hart Agreement") that "Hart would pay iGo a fifteen percent (15%) commission for any marketing opportunities it procured on Mr. Hart's behalf." *Id.* ¶ 12. During his employment, Plaintiff "successfully brokered a marketing agreement between the Coca-Cola Company ('Coke') and Hart (the 'Coke Deal')." *Id.* ¶ 13. Pursuant to the Coke Deal, Coke paid Mr. Hart a signing fee of $1 million; and pursuant to the Hart Agreement, Hart paid iGo its 15% commission ($150,000) (the "First Coke Commission"). (ECF No. 3 ¶ 14.) Pursuant to the Employment Agreement, Plaintiff was entitled to 20% of the First Coke Commission ($30,000.00). *Id.* ¶ 15.

Plaintiff alleges that "Mr. Hart received an in-kind payment of Coke-paid advertisements [] worth an additional $1 million. Pursuant to the Hart Agreement, iGo would have been paid a

commission of $150,000.00 (the 'Second Coke Commission') for the advertisements." (ECF No. 3 ¶ 16.) Plaintiff alleges, therefore, that "[p]ursuant to the Employment Agreement, Plaintiff was entitled to be paid twenty percent (20%) of the Second Coke Commission, totaling $30,000.00." *Id.* ¶ 17.

According to the Complaint, on June 21, 2013, on inquiry by Plaintiff, Defendant Murphy informed Plaintiff that Defendants had received neither the First nor the Second Coke Commission. (ECF No. 3 ¶ 18.) Subsequently, on June 25, 2013, Plaintiff sent Defendant Murphy "a payment schedule, which stipulated" that (1) Defendants would immediately pay Mr. Jones $13,000.00 of the first unpaid commission arising from the First Coke Commission (referred to in the Complaint as the "First Unpaid Commission"), and (2) Defendants would pay the remaining balance of $17,000.00 of the First Unpaid Commission upon iGo's receipt of the Second Coke Commission. *Id.* ¶ 19. iGo failed to pay Plaintiff the remaining $17,000.00 portion of the First Unpaid Commission and never paid Plaintiff any portion of the 50% commission from the Second Coke Commission; therefore, the Complaint alleges, "Plaintiff assumed iGo had never received the First Coke Commission or Second Coke Commission from Hart." *Id.* ¶ 20.

In addition to improperly withholding Plaintiff's commissions, Plaintiff further alleges that from May 2013 through December 2014, he earned 20 months' salary totaling $130,000.00, which Defendants failed to pay him. In December 2014, Plaintiff terminated his employment relationship with Defendants. (ECF No. 3 ¶¶ 34-35.)

Subsequently, in November 2017, Defendants sued Mr. Hart's company, Hartbeat Productions, in New York. *Id.* ¶ 21. Plaintiff contends that Defendants' New York complaint "confirmed that iGo had in fact received both the First Coke Commission and Second Coke

3

Commission" and that Defendants had been paid for two additional deals in connection with Mr. Hart. *Id.* ¶¶ 21, 24, 27.

Plaintiff alleges that pursuant to the Employment Agreement, he was entitled to 20% of the "Total Coke Commissions" – $102,000.00. *Id.* ¶ 30. Despite demand made through counsel on May 12, 2021, Defendants have not paid Plaintiff what he claims he is owed. *Id.* ¶¶ 39-40.

On September 13, 2022, Plaintiff filed the instant Complaint in the Circuit Court for Baltimore City, which Defendants removed to this court on December 1, 2022. The Complaint sets forth seven counts: (I) Violation of the Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN., LAB. & EMPL. §§ 3-501, *et seq.*; (II) Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; (III) Breach of Contract; (IV) Conversion; (V) Quantum Meruit; (VI) Unjust Enrichment; and (VII) Declaratory Judgment. Plaintiff seeks (1) damages in the amount of excess of $75,000; (2) punitive damages; (3) attorneys' fees and costs; (4) an order declaring (a) "[t]he Employment Agreement is an enforceable contract," (b) Defendants, jointly and severally, are in breach of the Employment Agreement, (c) Defendants, jointly and severally, are liable to Plaintiff for all amounts due and unpaid under the Employment Agreement, and (d) that Plaintiff is entitled to recover three times the unpaid wages, all costs, fees, and expenses incurred; and (e) any other relief this court deems just and proper. (ECF No. 3 at 39.)

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's claims are time-barred. (ECF No. 17-1 at 6-11.)

## II. LEGAL STANDARDS

### A. FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. 12(b)(6) Motion – Statute of Limitations

Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations. (ECF No. 17-1 at 6.) Plaintiff counters that the statute of limitations for the FLSA claim (Count II) should be equitably tolled. (ECF No. 20 at 6.) Plaintiff further counters that the discovery rule is applicable to Plaintiff's state law claims. *Id.* at 8.

Normally, at this stage, the court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*). "Because Rule 12(b)(6) 'is intended [only] to test the legal adequacy of the complaint,' '[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint.'" *Rich v. Hersl,* No. ELH-20-488, 2021 WL 2589731, *7 (D. Md. Jun. 24, 2021) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) and *Goodman*, 494 F.3d at 464) (citations omitted)). The court is satisfied that all facts necessary to determine whether Plaintiff's claims are time-barred appear on the face of the Complaint; therefore, the court will rule on Defendants' challenge that the Complaint is time-barred in its entirety.

##### 1. Applicable Limitations Period

A claim under the MWPCL (Count I) must be filed within three years and two weeks from the date on which the employer should have paid the wage. MD. CODE ANN., LAB. & EMPL. §§ 3-502, 3-507.1; MD. CODE ANN., CTS & JUD. PROC, § 5-101; *Higgins v. Food Lion, Inc.*, No. CIV.

A. AW00CV2617, 2001 WL 77696, at *3-4 (D. Md. Jan. 23, 2001). A claim under the FLSA (Count II) must be filed within two years for non-willful violations and within three years for willful violations.[2] 29 U.S.C. § 255(a). Plaintiff's state law claims—breach of contract, conversion, quantum meruit, and unjust enrichment—are subject to the three-year statute of limitations. MD. CODE ANN., CT. & JUD. PROC. § 5-101 (noting that civil suits must be filed within three years from the date the action accrues); *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 819, 822 (D. Md. 2015) (noting that three-year statute of limitations applies to breach of contract and quantum meruit claim); *Allied Inv. Corp. v. Jasen*, 123 Md. App. 88, 107 (1998) (noting that "an action for conversion is governed by the general three-year statute of limitations" set forth in MD. CODE ANN., CT. & JUD. PROC. § 5-101); *Cain v. Midland Funding, LLC*, 475 Md. 4, 39 (2021) (applying three year-state of limitations to unjust enrichment claim "that seeks the remedy of restitution of money"). Plaintiff's declaratory judgment claim that is based on a claim for money damages is also subject to a three-year statute of limitations. *See Allied Inv. Corp. v. Jasen*, 354 Md. 547, 568 (1999) (holding "that when a claim for declaratory judgment is based upon the breach of an underlying obligation that triggers legal or equitable liability, the statute of limitations for the declaratory relief claim is the same as the statute of limitations for the legal or equitable remedy") (citing *Com. Union Ins. Co. v. Port Hayden Co.*, 116 Md. App. 605, 659 (1997), *cert denied*, 348 Md. 205 (1997)).

---

[2] "If an FLSA statute of limitations issue is clear from the face of the complaint, then the plaintiff must show that the defendant willfully violated the FLSA in order to avail itself of the three year statute of limitations." *Alcorn v. George Mason Mortg., LLC*, No. RDB-15-2727, 2016 WL 3440261, at *4 (D. Md. June 23, 2016). "To establish willfulness, a plaintiff must demonstrate that the defendant either knew that its conduct violated the FLSA, or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Id.* "Negligent conduct does not amount to willfulness." *Id.* The Complaint does not allege that Defendants willfully violated the FLSA; however, Plaintiff asserts in his Response to the Motion that "the Complaint sufficiently alleges that Defendants' withholding of the Unpaid Wages was willful and wrongful." (ECF No. 20 at 6.) That notwithstanding, as discussed below, Plaintiff's FLSA claim is time-barred whether it is subject to the two- or three-year statute of limitations.

### 2. <u>Accrual</u>

#### *a.   Counts I and II*

For purposes of the FLSA, "[i]t is generally accepted that 'a cause of action accrues for statute of limitation purposes at each regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed.'" *Higgins,* 2001 WL 77696, at *2 (quoting *Freeman v. Nat'l Broad. Co., Inc.*, 846 F. Supp. 1109, 1159 (S.D.N.Y. 1993), *rev'd on other grounds*, 80 F.3d 78 (2d Cir. 1996)). Similarly, for a MWPCA claim, "[t]he statute of limitations on each cause of action would not begin until two weeks after the employer is required to pay the employee." *Id.* at *4.

Plaintiff's allegations, taken as true, make clear that the FLSA and MWPCL claims are barred by the statute of limitations. Plaintiff alleges that, pursuant to the Employment Agreement, Defendants were obligated to pay him every two weeks – on the 1st and 15th of every month; and that he terminated his employment relationship with Defendants in December 2014. (ECF No. 3 ¶ 10.) Defendants, therefore, should have issued a final paycheck on December 15, 2014, or, at the latest January 1, 2015; and pursuant to MD. CODE ANN., LAB. & EMPL. §§ 3-507.1(a) and 5-101, the statute of limitations began to toll two weeks after the day he was entitled to wages (*i.e.*, December 29, 2014; or January 15, 2015). Accordingly, Plaintiff had, at the outside, until January 15, 2018, to file a claim pursuant to MWPCL. Plaintiff did not file the instant action until September 13, 2022, accordingly, the MWPCL claim is barred by the statute of limitations.[3]

As to Plaintiff's FLSA claim, "a cause of action accrues signaling the commencement of the limitations period, on each day for which a regular paycheck is issued or due." *See Higgins*,

---

[3] To the extent Plaintiff argues that discovery rule tolls the MWPCL claim, the court disagrees. *See* Section III.A.2.b., *infra*.

*supra.* As discussed above, Defendants should have issued a final paycheck to Plaintiff on December 15, 2014, or January 1, 2015. Accordingly, the statute of limitations period began running at the latest on January 1, 2015, allowing Plaintiff until January 15, 2018 (at the outside), to file a claim for willful violation of the FLSA. Plaintiff did not file the instant action until September 13, 2022. Accordingly, unless equitable tolling applies, the FLSA claim is barred by the statute of limitations.

Plaintiff argues that the statute of limitations for his FLSA claim was equitably tolled until late 2020 when he learned about the New York/Hart complaint or, at the latest, May 2021, when Plaintiff retained counsel. (ECF No. 20 at 6-7.)

"The equitable tolling doctrine 'is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court.'" *Delcid v. Isabella*, No. MJM-20-3167, 2022 WL 17342048, at *2 (D. Md. Nov. 30, 2022) (quoting *Baxter v. Burns & McDonnell Eng'g Co., Inc.*, No. JKB-19-3241, 2020 WL 4286828, at *3 (D. Md. July 27, 2020)). It is "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] does not lend itself to bright-line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

"Equitable tolling is appropriate in two circumstances: first, when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and second, when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Harris*, 209 F.3d at 330). Further, it is a "rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [his or her] rights.'" *Id.* at 145-46 (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)); *see Harris*, 209 F.3d at 330 (considering the

equitable tolling doctrine and noting "that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). Importantly, "[e]quitable tolling is not appropriate . . . 'where the claimant failed to exercise due diligence in preserving his legal rights.'" *Chao*, 291 F.3d at 283 (quoting *Irwin v. Dep't of Veterans*, 498 U.S. 89 (1990)).

Plaintiff directs the court's attention to *Kim v. Lee*. No. 1:18-cv-1350, 2019 WL 8892575, at *3 (E.D. Va. Apr. 15, 2019). In *Kim*, the court concluded that the defendants could not meet their burden to demonstrate that the plaintiff was not entitled to tolling of the statute of limitations, in part, because "the [c]omplaint alleges that during the entire period of plaintiff's employment, defendants did not post the statutorily prescribed notice of an employee's rights under the FLSA." *Id.*; *see Mata v. G.O. Contractors Group, Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *4 n.1 (D. Md. Oct. 29, 2015) (holding that the statute of limitations may be equitably tolled where "a defendant fails to post signs advising employees of their wage rights" and the plaintiffs alleged they "did not see any signs in the workplace advising employees of their right to overtime pay"); *Delcid v. Isabella*, No. MJM-20-3167, 2022 WL 17342048, at *2 (D. Md. Nov. 30, 2022) (holding that "equitable tolling of the statute of limitations may be appropriate in FLSA actions where the employer failed to post statutory notice of employee's rights").

Unlike the *Kim* plaintiff, Plaintiff does not allege or suggest that Defendants failed to post the statutorily prescribed notice of an employee's rights under the FLSA. Further, equitable tolling is inappropriate "where the claimant failed to exercise due diligence in preserving his legal rights." *See Chao*, *supra*. There are no allegations to suggest that Plaintiff exercised even the barest of due diligence to preserve his alleged legal right. Indeed, in June 2013, after inquiring into whether

Defendants received the commissions to which Plaintiff alleges entitlement, Plaintiff failed to take any action. Again, after terminating his employment with Defendants in 2014, Plaintiff stayed silent and took no steps to preserve his legal rights. In November 2017, after discovery Defendants' New York action against Mr. Hart's company, Hartbeat, Plaintiff took no action to preserve his legal rights. Not until 2021, almost seven years after terminating his engagement with Defendants and four years after the New York complaint (which was a matter of public record),[4] did Plaintiff engage counsel "to advise him of his rights under state and federal wage laws at that time." (ECF No. 3 ¶ 38.) Nothing in this action suggests the existence of extraordinary circumstances that warrant tolling of the statutes of limitations. *See generally Cruz*, *supra*. Accordingly, the court declines to apply equitable tolling to Plaintiff's actions. The Motion will be granted as to Counts I and II.

### b. Counts III through VII

In Maryland, "the statute of limitations for a breach of contract claim usually begins to accrue on the date of the alleged breach." *Chevron U.S.A. Inc. v. Apex Oil Company, Inc.*, 113 F. Supp. 3d 807, 819 (D. Md. 2015); *see Robinson v. Pa. Nat'l Mutual Casualty Ins. Co.*, No. 21-cv-1601-LKG, 2023 WL 3477117, at *2 (D. Md. May 1, 2023) (noting that "the United States Court of Appeals for the Fourth Circuit has recognized that this statute of limitations period begins to run from the date of the alleged breach"). However, "Maryland's discovery rule tolls the accrual date of the action until such time as the potential Plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Robinson*, 2023 WL 3477117, at *2. The discovery rule "does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc. v. Lockheed Martin Corp.*, 383 Md.

---

[4] *See* n. 5, *infra*.

151, 168 (2004) (quoting *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351 (2003)). "A plaintiff is put on inquiry notice when he, she, or it possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . [that] a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Id.* (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 443, 448-49 (2004)). Because Plaintiff's claims for conversion, quantum meruit, unjust enrichment, and declaratory judgment are premised on Defendants' alleged breach of the Employment Agreement by failure to pay salary and commissions (ECF No. 3 ¶¶ 69-71, 74-76, 78, 81, 85-86), the accrual date for all of Plaintiff's state law claims (Counts III through VII) is the date Plaintiff knew, or with due diligence reasonably should have known, of the alleged breach.

Plaintiff argues that the discovery rule applies and, therefore, because he "did not learn that iGo was required to pay the wages he had earned from procuring the Coke Deal until after he discovered the Hart Complaint in late 2020,"[5] Plaintiff's claim did not accrue until late 2020. (ECF No. 20 at 8.) The court disagrees.

As stated above, "Maryland's discovery rule tolls the accrual date of the action until such time as the potential Plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Robinson*, 2023 WL 3477117, at *2. Plaintiff alleges that in June 2013 he inquired whether Defendants had received the Coke Commissions (ECF No. 3 ¶ 17), which indicates his knowledge and awareness in June 2013 that Defendants had failed to pay his commission due at signing of the Coke Deal. A few days following his inquiry, Plaintiff sent Defendants a payment schedule for the unpaid Coke Deal commissions per the Employment Agreement.

---

[5] "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). There is no allegation in the Complaint that Plaintiff did not discover the Hart complaint until late 2020, instead Plaintiff alleges that Defendants filed the Hart complaint in 2017.

Moreover, as set forth earlier, Plaintiff's allegations lead to no other conclusion but that he was on notice by January 2015 at the latest that Defendants were in breach of the Employment Agreement by failure to pay his salary. (ECF No. 3 ¶ 33.) Construed in the light most favorable to Plaintiff, and all well-pled allegations taken as true, it is clear from the Complaint that Plaintiff had "knowledge of circumstances which would cause a reasonable person in the position of [Plaintiff] to undertake an investigation, which, if pursued with reasonable diligence, would have led to knowledge of the alleged [breaches]." *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 446 (2000).

In sum, Plaintiff's allegations clearly demonstrate that he knew, or with reasonable diligence should have known, of facts that would cause a reasonable person to investigate further, and such investigation would have revealed Plaintiff's entitlement to pursue this action. The events Plaintiff complains of occurred nearly eight years before he filed the instant Complaint. Therefore, all claims set forth in the Complaint are time-barred.

## CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 17) will be granted.

/S/_____
Julie R. Rubin
United States District Judge

September 11, 2023